## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| THOMAS P. GORCZYNSKI, *individually and on behalf of others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC., SUPER K CORPORATION d/b/a ABC DISCOUNT APPLIANCES, MIDEA AMERICA CORP., MIDEA MICROWAVE AND ELECTRICAL APPLIANCES MANUFACTURING CO., LTD., AND ABC CORPS. 1-10,<br><br>Defendants. | Civil No. 18-10661(RMB/KMW)<br><br>**OPINION** |

APPEARANCES:

SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
By: Simon B. Paris, Esq.; Patrick Howard, Esq.;
Charles J. Kochner, Esq.
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
       Counsel for Plaintiff Thomas P. Gorczynski

K&L GATES LLP
By: Patrick J. Perrone, Esq.; Loly G. Tor, Esq.;
Michael S. Nelson, Esq.
One Newark Center, 10th Floor
Newark, New Jersey 07102
    Counsel for Defendant Electrolux Home Products, Inc.

WARD GREENBERG HELLER & REIDY, LLP
By: Gerhard P. Dietrich, Esq.; Gabrielle A. Giombetti, Esq.
1835 Market Street, Suite 650
Philadelphia, Pennsylvania 19103
    Counsel for Defendant Midea America Corp.

**RENÉE MARIE BUMB,** UNITED STATES DISTRICT JUDGE:

Plaintiff Thomas P. Gorczynski ("Plaintiff") brings this putative class action, alleging that Defendants Electrolux Home Products, Inc. ("Electrolux") and Midea America Corp. ("Midea USA") knowingly manufactured, marketed, and sold microwaves with defective handles in violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-2.  Plaintiff also claims that Defendant Electrolux violated the Magnuson-Moss Consumer Products Warranties Act ("MMWA"), 15 U.S.C. § 2301, et seq., and breached the implied warranty of merchantability.

Both Electrolux [Dkt. No. 35] and Midea USA [Dkt. No. 47] now move to dismiss Plaintiff's Amended Complaint [Dkt. No. 26] on various bases.  Defendants' primary arguments for dismissal are that Plaintiff's claims are subsumed by the New Jersey Products Liability Act ("PLA"), N.J.S.A. 2A:58C-1, et seq., and that Plaintiff has failed to sufficiently plead his CFA claim.  Electrolux also sets forth arguments for dismissal of the breach of implied warranty and MMWA claims.  For the reasons set forth herein, both Motions to Dismiss will be **DENIED**, without prejudice.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

In this purported class action, Plaintiff alleges that Defendants designed, manufactured, and marketed over-the-range stainless-steel microwaves (the "Microwaves") with defective stainless-steel handles that become excessively hot if an individual is cooking on a stovetop below (the "Handle Defect"). Plaintiff alleges that in May 2015, he purchased a Frigidaire Gallery Over-the-Range Microwave, which is a model that suffers from the Handle Defect. See Am. Compl., at ¶ 12.

Plaintiff contends that the Microwaves in question, including his own, were manufactured by Midea Microwave China ("Midea China") and distributed by Electrolux in the United States. As alleged in the Amended Complaint, Midea USA is "the North American headquarters of Midea, the world's leading manufacturer of air conditioners and home appliances." See id. at ¶ 26. Meanwhile, Electrolux "distributes products under a variety of brand names, including Electrolux, Electrolux ICON, Frigidaire Professional, Frigidaire Gallery, Frigidaire, Eureka, Kelvinator, Sanitaire, Tappan, and White-Westinghouse." See id. at ¶ 17.

Plaintiff alleges that the Handle Defect causes the Microwaves' handles to reach temperatures as high as 200° Fahrenheit when a cooktop below is operating at full power. See Am. Compl., at ¶ 6. Because the high temperature of the handle

3

can make it unsafe for an individual to open the Microwave door, Plaintiff claims that the Handle Defect renders the Microwave unreasonably dangerous and unfit for its intended purpose. See id. at ¶ 8.

According to Plaintiff, Midea China became aware of the Handle Defect during testing in 2010, prior to distributing the Microwaves in the United States. See Am. Compl., at ¶ 6. Plaintiff further alleges that these test results were accessible to Electrolux as early as 2010, and customers complained about the Handle Defect as early as 2013, yet Electrolux continued to sell the Microwaves throughout the United States, with over 70,000 sales in New Jersey. Id. Plaintiff contends that, despite full knowledge of the Handle Defect, Defendants have neither rectified the issue (through repair or replacement of the handle) nor warned consumers about the existence of the Handle Defect.

Plaintiff filed the initial complaint [Dkt. No. 1-1], individually and on behalf of all others similarly situated, in the New Jersey Superior Court, Camden County, in May 2018. Electrolux removed the case to this Court on June 15, 2018. Following a pre-motion letter filed by Electrolux, expressing an intent to file a motion to dismiss, Plaintiff filed the Amended Complaint on August 6, 2018. Now, Defendants move to dismiss Plaintiff's Amended Complaint under Fed R. Civ. P. 12(b)(6).

**II. LEGAL STANDARD**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). When undertaking this review, courts are limited to the allegations found in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic

documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. ANALYSIS**

Defendants each filed motions to dismiss the Amended Complaint, both arguing that (1) Plaintiff's CFA and breach of implied warranty claims are subsumed by the PLA; (2) Plaintiff failed to plead his CFA claim with particularity, as required by Fed. R. Civ. P. 9(b); and (3) Plaintiff lacks standing under Article III.[1] Electrolux also argues that Plaintiff's warranty claims contain deficiencies and are time barred. This Court finds that Plaintiff's claims are not subsumed by the PLA and that Electrolux's other arguments are for dismissal are without merit.

**A. New Jersey Products Liability Act**

First, Defendants argue that Plaintiff's claims are subsumed by the PLA, because the PLA is the exclusive remedy for claims arising out of harm caused by a defective product. See Electrolux's MTD, at 10; Midea USA's MTD, at 9. In opposition,

---

[1] Defendants argue that Plaintiff lacks standing to pursue class-wide claims for products that he did not personally purchase. However, the Court will not address these arguments as they are more appropriately set forth in response to a motion for class certification.

6

Plaintiff argues that the PLA does not apply where a plaintiff alleges damage to the product itself. See Plaintiff's Response in Opposition to Electrolux's MTD ("Pl.'s Resp. to Electrolux)[Dkt. No. 44]. The Court agrees with Plaintiff.

The PLA was enacted by the New Jersey Legislature in 1987 "based on an 'urgent need for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products.'" Kuzian v. Electrolux Home Prod., Inc., 937 F. Supp. 2d 599, 607 (D.N.J. 2013)(citing Sinclair v. Merck & Co., Inc., 195 N.J. 51 (2008)). In 2007, the New Jersey Supreme Court set forth substantive guidance regarding the scope of the PLA and explicitly recognized that "'[w]ith the passage of the Product Liability Act ... there came to be one unified, statutorily defined theory of recovery for harm caused by a product.'" In re Lead Paint Litigation, 191 N.J. 405(2007)(internal citation omitted). The New Jersey Supreme Court also noted that "[t]he language chosen by the Legislature in enacting the PLA [was] both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." Id. (citing N.J.S.A. 2A:58C-1(b)(3)).

The nature of the alleged "harm," caused by a defective product, dictates whether the NJPLA governs that specific type of claim. See Kuzian, 937 F. Supp. 2d at 607-08. Under the PLA, a

7

product liability action is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3). The PLA further defines "harm caused by a product" to include the following: "(a) physical damage to property, <u>other than to the product itself</u>; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J.S.A. 2A:58C-1(b)(2)(emphasis added). Thus, a claim for "physical damage ... to the product itself" is not a "product liability action" because the PLA specifically excludes such damage from its definition of "harm." <u>Estate of Edward W. Knoster v. Ford Motor Co.</u>, 200 F. App'x 106, 116 (3d Cir. 2006)(citing <u>Alloway v. General Marine Ins. L.P.</u>, 149 N.J. 620(1997)); <u>see also</u> <u>Beyerle v. Wright Med. Tech. Inc.</u>, 2014 WL 12623029, at *3 (D.N.J. Dec. 23, 2014)

In this case, Plaintiff alleges only that the Handle Defect damages the value and usefulness of the Microwave itself. Specifically, Plaintiff alleges that Handle Defect makes the handle unreasonably hot and prevents consumers from opening the Microwave door, rendering the Microwave unusable when an individual is cooking on the surface below. As result, Plaintiff

8

seeks economic damages associated with the cost of repair or replacement of the Microwave. Plaintiff neither alleges nor seeks any damages for physical harm caused by the handle defect (such as burns to his hand). Plaintiff also does not seek any damages for other harms under the purview of the PLA, such as emotional distress.

As noted by the Third Circuit, the "PLA cannot <u>subsume</u> that which it explicitly <u>excludes</u> from its coverage." <u>Knoster</u>, 200 F. App'x at 116 (emphasis in original). Thus, where a CFA claim relates exclusively to harm to the product itself, it cannot be subsumed by the PLA. <u>See</u> <u>id.</u>; <u>see also</u> <u>Beyerle v. Wright Med. Tech. Inc.</u>, 2014 WL 12623029, at *3 (D.N.J. Dec. 23, 2014)("At this stage in the litigation, it appears that Plaintiff's CFA claim seeks economic damages resulting from harm to the product itself, and, as such, is not subsumed by the PLA").

Furthermore, Courts in the District of New Jersey have held that claims alleging that a plaintiff "did not get what [they] paid for," such as breach of implied warranty and unjust enrichment, are also not subsumed by the PLA. <u>See</u> <u>Volin v. Gen. Elec. Co.</u>, 189 F. Supp. 3d 411, 418 (D.N.J. 2016), as amended (May 31, 2016). As such, Plaintiff's claims, which pertain exclusively to "harm" to the Microwave itself, cannot be subsumed by the PLA.

9

**B. New Jersey Consumer Fraud Act**

Plaintiff's Amended Complaint asserts a cause of action under the New Jersey Consumer Fraud Act, which "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." Gotthelf v. Toyota Motor Sales, U.S.A., Inc., 525 F. App'x 94, 103 (3d Cir. 2013)(citing Gonzalez v. Wilshire Credit Corp., 207 N.J. 557 (2011)). To constitute consumer fraud, "the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer." Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392 (1995).

To state a claim under the CFA, a plaintiff must allege facts sufficient to establish: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. See International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 389-391(2007)("IUOEL"). Under the CFA, there are three categories of "unlawful conduct": (1) affirmative acts, (2) knowing omissions, and (3) violations of regulations. Id. "Proof of any one of those acts or omissions is sufficient to establish unlawful conduct under the CFA." Kuzian, 937 F. Supp. 2d at 614 (emphasis added). As explained by the New Jersey Supreme Court, the "CFA does not require proof that a consumer

10

has actually relied on a prohibited act in order to recover. In place of the traditional reliance element of fraud and misrepresentation, we have required that plaintiffs demonstrate that they have sustained an ascertainable loss." IUOEL, 192 N.J. at 391. Additionally, the CFA is "remedial legislation which should be construed liberally." Id. at 376 n.1.

In this instance, Plaintiff argues that he has adequately alleged the three elements of a CFA claim. First, Plaintiff argues that Defendants engaged in unlawful conduct by knowingly omitting information about the Handle Defect from marketing materials and by affirmatively misleading customers by marketing the Microwaves as fit for use "Over-the-Range" despite the Handle Defect. Second, Plaintiff argues that he alleged an "ascertainable loss" in that the product is worth less than what he paid for it, because it is unfit for its intended purpose. Third, Plaintiff alleges that Defendant's affirmative acts and omissions caused him to overpay for a defective microwave.

Defendants argue that Plaintiff's CFA claim lacks the level of particularity necessary when a claim is premised on fraud or misrepresentation, as required under Fed. R. Civ. P. 9(b). To satisfy the requirements of Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The level of particularity required is sufficient details to put Defendants on notice of the

"precise misconduct with which they are charged." See Smajlaj, et al. v. Campbell Soup Co., 782 F.Supp.2d 84, 104 (D.N.J.2011). When alleging an affirmative misrepresentation under the CFA, the complaint "must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss." See Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC, 945 F. Supp. 2d 543, 558 (D.N.J. 2013).

In this case, Plaintiff argues that his claim is premised upon two types of "unlawful conduct" under the CFA: both "affirmative acts" and "knowing omissions." Affirmative acts of fraud require no showing of intent on behalf of the defendant, meaning that "a defendant who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence or the intent to deceive." Vukovich v. Haifa, Inc., 2007 WL 655597, at *9 (D.N.J. Feb. 27, 2007). "In contrast, when the alleged consumer fraud consists of an omission, a plaintiff must show that the defendant acted with knowledge." Id.

Defendants argue that Plaintiff's CFA claim is deficient because Plaintiff fails to allege that Defendants "knowingly concealed the alleged defect." Indeed, Plaintiff's complaint is inconsistent in the degree of knowledge ascribed to Defendants. At one point, Plaintiff alleges that Midea China knew of the

defect through test results in 2010, but that these results were only "known to or readily accessible" to Electrolux and Midea USA. See Am. Compl., at ¶ 64. In other places, Plaintiff alleges that all Defendants "held actual knowledge of the handle temperatures in 2010." Id. at ¶ 72. If Plaintiff's CFA claim was premised solely upon a knowing omission, these inconsistent allegations about Defendants' degree of knowledge would possibly warrant dismissal. However, Plaintiff has sufficiently alleged that Defendants' representations, that the Microwaves were suitable for over-the-range use, were false. Thus, Plaintiff has adequately alleged unlawful conduct in the form of an affirmative misrepresentation, even in the absence of knowledge or intent.

Defendants also argue that Plaintiff has failed to allege an ascertainable loss under the CFA. However, an ascertainable loss under the CFA "occurs when a consumer receives less than what was promised." See Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 336 (D.N.J. 2014)(internal citations omitted). In other words, when a plaintiff "received something less than, and different from, what they reasonably expected in view of defendant's presentations. That is all that is required to establish ascertainable loss." See id. Plaintiff clearly alleges that he purchased a product that was marketed as an "Over-the-Range" microwave, but cannot use it for its intended purposes. Plaintiff alleges that he would have either paid less or not

purchased the Microwave if he had known of the Handle Defect. Although Defendants argue that Plaintiff never alleges that the Handle Defect manifested itself in his Microwave, the Amended Complaint clearly contains such an allegation. See Am. Compl., at ¶¶ 54-55 ("As a result of Plaintiff's skin contact with the handle of his Microwave, he discovered the exceedingly high temperature of the handle"). Therefore, Plaintiff's allegations sufficiently set forth ascertainable loss and causation.

### C. Breach of Warranty of Merchantability

Finally, Electrolux argues that Plaintiff's breach of the implied warranty of merchantability and MMWA claims must be dismissed because they are time-barred. Specifically, Electrolux argues that the "Use & Care Guide" for the Microwave included a clear and conspicuous disclaimer that reduced the statute of limitations for breach of implied warranty claims to one year (as opposed to the statutory default of four years).

New Jersey law generally recognizes disclaimers and will enforce them as long as they are clear and conspicuous. See N.J.S.A. 12A:2-316; Realmuto v. Straub Motors, Inc., 65 N.J. 336, 341-42, 322 A.2d 440 (1974); Gladden v. Cadillac Motor Car Div., 83 N.J. 320, 331, 416 A.2d 394 (1980). The Third Circuit has recognized that reductions to the statute of limitations for breach of implied warranty claims may be permissible, in accordance with N.J.S.A. 12A:2-725, as long as the disclaimer

14

satisfies the language requirements of § 12A:2-316. See New Jersey Transit Corp. v. Harsco Corp., 497 F.3d 323, 328 (3d Cir. 2007).[2] To be conspicuous, a disclaimer must be "so written that a reasonable person against whom it is to operate ought to have noticed it." Gladden, 83 N.J. at 331.

The disclaimer at issue was displayed in all capital letters, with a bolded header, on the last pages the Microwave's Use & Care Guide (attached to the Amended Complaint as "Exhibit E"). Plaintiff argues that the location of the disclaimer, at the end of the Use & Care Guide and packaged inside the product's box, meant that it was not visible to consumers at the point of sale. Therefore, Plaintiff argues that the time limitation of the implied warranty was not clear and conspicuous, as required by N.J.S.A. § 12A:2-316.

As set forth on the last page of the Use & Care Guide, titled "MAJOR APPLIANCE WARRANTY INFORMATION," the policy states, in relevant part:

> **DISCLAIMER OF IMPLIED WARRANTIES; LIMITATION OF REMEDIES**
>
> CUSTOMER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR OR REPLACEMENT AS PROVIDED HEREIN. CLAIMS BASED ON IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW, BUT NOT LESS THAN ONE YEAR. ELECTROLUX SHALL NOT BE

---

[2] Third Circuit precedent directly contradicts Defendant Electrolux's argument that the language requirements of § 12A:2-316 do not apply to reductions to the limitations period under § 12A:2-725.

15

LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES SUCH AS PROPERTY DAMAGE AND INCIDENTAL EXPENSES RESULTING FROM ANY BREACH OF THIS WRITTEN LIMITED WARRANTY OR ANY IMPLIED WARRANTY. SOME STATES AND PROVINCES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR LIMITATIONS ON THE DURATION OF IMPLIED WARRANTIES, SO THESE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS WRITTEN WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS. YOU MAY ALSO HAVE OTHER RIGHTS THAT VARY FROM STATE TO STATE.

Frigidaire Use & Care Guide, p. 32 [Dkt. No. 26-5].

Deciding whether a warranty disclaimer is "clear and conspicuous" is a question of law for the court. See Hillsborough Rare Coins, LLC v. ADT LLC, 2017 WL 1731695, at *9 (D.N.J. May 2, 2017). Courts in the District of New Jersey have previously held that warranty disclaimers are conspicuous where they contain all capital letters and include the language "implied warranties of merchantability," even where such disclaimers are located on the last page of a user manual. See Spera v. Samsung Elecs. Am., Inc., 2014 WL 1334256, at *8 (D.N.J. Apr. 2, 2014). However, "warranties which do not prominently and conspicuously communicate important exclusions or limitations in clear and readily understandable language are generally regarded as improper or invalid since they serve to mislead or confuse the average consumer." Gladden v. Cadillac Motor Car Div., Gen. Motors Corp., 83 N.J. 320, 335, (1980)(internal citations omitted).

In this case, the disclaimer's language, purporting to limit the implied warranty period to one year, is not clear and

conspicuous to the average consumer. Notably the disclaimer states that claims "are limited to one year or the shortest period allowed by law, but not less than one year," while simultaneously acknowledging that "some states and provinces do not allow the exclusion or limitation of incidental or consequential damages, or limitations on the duration of implied warranties, so these limitations or exclusions may not apply to you. This written warranty gives you specific legal rights. You may also have other rights that vary from state to state." As the average consumer is not fully versed in the specific statutory limitations periods provided on a state-by-state basis, this language seems likely to mislead or confuse customers. Furthermore, Plaintiff has plausibly alleged that the average consumer would not have noticed the disclaimer. See Durso v. Samsung Electonics Am., Inc., 2014 WL 4237590, at *9 (D.N.J. Aug. 26, 2014)(finding that a reasonable person may not have noticed the warranty disclaimer for washing machine because it was located at the end of the user manual and would not be seen until after the washer was delivered and installed). Therefore, this Court finds that it would not be "clear and conspicuous" to the average consumer whether or not this limitation applied to him. Although the Court is skeptical that discovery will produce evidence that Defendant's disclaimer

language was clear and conspicuous, this Court will not preclude Electrolux from raising this issue again at a later point.

Accordingly, the Court will deny Electrolux's motion to dismiss Plaintiff's claim for breach of implied warranty of merchantability.  Additionally, because Plaintiff's MMWA claim is coextensive with the underlying state law warranty claim, this claim will go forward to the extent that the breach of implied warranty claim remains viable. See Volin, 189 F. Supp. 3d at 421 (citing Cooper v. Samsung Elecs. Am., Inc., 374 Fed.Appx. 250, 254 (3d Cir.2010)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss will be DENIED without prejudice. An appropriate Order shall issue on this date.

DATED: April 29, 2019

                                      s/Renée Marie Bumb
                                      RENÉE MARIE BUMB
                                      UNITED STATES DISTRICT JUDGE