# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| THOMAS P. GORCZYNSKI, *individually and on behalf of others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC., SUPER K CORPORATION d/b/a ABC DISCOUNT APPLIANCES, MIDEA AMERICA CORP., MIDEA MICROWAVE AND ELECTRICAL APPLIANCES MANUFACTURING CO., LTD., AND ABC CORPS. 1-10,<br><br>Defendants. | Civil No. 18-10661(RMB/KMW)<br><br>OPINION |

**APPEARANCES:**

SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
By: Simon B. Paris, Esq.; Patrick Howard, Esq.;
Charles J. Kochner, Esq.
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
        Counsel for Plaintiff Thomas P. Gorczynski

K&L GATES LLP
By: Patrick J. Perrone, Esq.; Loly G. Tor, Esq.;
Michael S. Nelson, Esq.
One Newark Center, 10th Floor
Newark, New Jersey 07102
    Counsel for Defendant Electrolux Home Products, Inc.

WARD GREENBERG HELLER & REIDY, LLP
By: Gerhard P. Dietrich, Esq.; Gabrielle A. Giombetti, Esq.
1835 Market Street, Suite 650
Philadelphia, Pennsylvania 19103
    Counsel for Defendant Midea America Corp.

**RENÉE MARIE BUMB,** UNITED STATES DISTRICT JUDGE:

Plaintiff Thomas P. Gorczynski ("Plaintiff") brings this putative class action, alleging that Defendants Electrolux Home Products, Inc. ("Electrolux") and Midea America Corp. ("Midea USA")(together, "Defendants") knowingly manufactured, marketed, and sold microwaves with defective handles in violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-2. Plaintiff also claims that Defendant Electrolux violated the Magnuson-Moss Consumer Products Warranties Act ("MMWA"), 15 U.S.C. § 2301, et seq., and breached the implied warranty of merchantability. On April 29, 2019, this Court issued an Opinion (the "April 29 Opinion")[Dkt. No. 67], denying Defendants' motions to dismiss [Dkt. Nos. 35, 47].

Now, Electrolux and Midea USA each move for reconsideration of this Court's April 29 Opinion to "correct a clear error of law or fact to prevent injustice." For the reasons set forth herein, Midea USA's Motion for Reconsideration (the "Midea MFR")[Dkt. No. 69] will be **GRANTED,** but Electrolux's Motion for Reconsideration (the "Electrolux MFR")[Dkt. No. 70] will be **DENIED.**

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

In this putative class action, Plaintiff alleges that Defendants designed, manufactured, and marketed over-the-range stainless-steel microwaves (the "Microwaves") with defective

2

stainless-steel handles that become excessively hot if an individual is cooking on a stovetop below (the "Handle Defect"). Plaintiff alleges that in May 2015, he purchased a Frigidaire Gallery Over-the-Range Microwave, which is a model that suffers from the Handle Defect. See Am. Compl., at ¶ 12.

Plaintiff contends that the Microwaves in question, including his own, were manufactured by Midea Microwave China ("Midea China")[1] and distributed by Electrolux in the United States. As alleged in the Amended Complaint, Midea USA is "the North American headquarters of Midea, the world's leading manufacturer of air conditioners and home appliances." See id. at ¶ 26. Meanwhile, Electrolux "distributes products under a variety of brand names, including Electrolux, Electrolux ICON, Frigidaire Professional, Frigidaire Gallery, Frigidaire, Eureka, Kelvinator, Sanitaire, Tappan, and White-Westinghouse." See id. at ¶ 17.

Plaintiff alleges that the Handle Defect causes the Microwaves' handles to reach temperatures as high as 200° Fahrenheit when a cooktop below is operating at full power. See Am. Compl., at ¶ 6. Because the high temperature of the handle can make it unsafe for an individual to open the Microwave door,

---

[1] Although Midea China was named as a defendant in the Amended Complaint, Plaintiff voluntarily dismissed his claims against Midea China on November 26, 2018. See Dkt. Nos. 60, 61.

3

Plaintiff claims that the Handle Defect renders the Microwave unreasonably dangerous and unfit for its intended purpose when the range below is being used. See id. at ¶ 8.

According to Plaintiff, Midea China became aware of the Handle Defect during testing in 2010, prior to distributing the Microwaves in the United States. See Am. Compl., at ¶ 6. Plaintiff further alleges that these test results were accessible to Electrolux as early as 2010, and customers complained about the Handle Defect as early as 2013, yet Electrolux continued to sell the Microwaves throughout the United States, with over 70,000 sales in New Jersey. Id. Plaintiff contends that, despite full knowledge of the Handle Defect, Defendants have neither rectified the issue (through repair or replacement of the handle) nor warned consumers about the existence of the Handle Defect.

Plaintiff filed the initial complaint [Dkt. No. 1-1], individually and on behalf of all others similarly situated, in the New Jersey Superior Court, Camden County, in May 2018. Electrolux removed the case to this Court on June 15, 2018. Following a pre-motion letter filed by Electrolux, expressing an intent to file a motion to dismiss, Plaintiff filed the Amended Complaint on August 6, 2018. This Court issued an Opinion and Order on April 29, 2019, denying the Defendants' motions to dismiss. Now, this matter comes before the Court upon motions for reconsideration, filed by Electrolux and Midea USA, asking

this Court to reconsider its decision to deny their respective motions to dismiss.

**II.  <u>LEGAL STANDARD – MOTION FOR RECONSIDERATION</u>**

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(i), a motion for reconsideration must be based on one of three grounds: (1) an intervening change in controlling law, (2) new evidence not previously available, or (3) a clear error of law or manifest injustice. <u>N. River Ins. Co. v. CIGNA Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995).

The Third Circuit has held that the purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985).  However, the "extraordinary remedy" of reconsideration is "to be granted sparingly." <u>A.K. Stamping Co., Inc. v. Instrument Specialties Co., Inc.</u>, 106 F. Supp. 2d 627, 662 (D.N.J. 2000)(quoting <u>NL Indus. Inc., v. Commercial Union Ins. Co.</u>, 935 F. Supp. 513, 516 (D.N.J. 1996)). A motion for reconsideration may be granted only if there is a dispositive factual or legal matter that was presented but not considered that would have reasonably resulted in a different conclusion by the court. <u>White v. City of Trenton</u>, 848 F. Supp. 2d 497, 500 (D.N.J. 2012).  Mere disagreement with a court's

decision should be raised through the appellate process and is thus inappropriate on a motion for reconsideration. United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

III. **ANALYSIS**

In response to this Court's April 29 Opinion, Defendants each filed motions for reconsideration. Electrolux argues that this Court committed "manifest errors in fact and law" in finding that Plaintiff's claims were neither subsumed by the New Jersey Products Liability Act (the "PLA") nor barred by Electrolux's attempt to reduce the statute of limitations. Meanwhile, Midea USA argues that this Court erred by conflating the "knowing omission" claims against Midea USA, with the "affirmative misrepresentation" claims against Electrolux. The Court addresses each of these arguments below.

   *A.  Subsumption under Products Liability Act (Electrolux)*

First, Electrolux argues that the Court committed "a manifest error of both law and fact" in finding that Plaintiff's claims are not subsumed by the PLA. Previously, this Court found that the alleged Handle Defect constituted "harm to the product itself," because it diminished the Microwave's value and usefulness. In its Motion for Reconsideration, Electrolux argues that claims for "harm to the product itself" should be limited to circumstances in which "the product broke." This Court finds

6

that Electrolux's proposed interpretation is unreasonably narrow and inconsistent with precedent in the District of New Jersey.

Under the PLA, a product liability action is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3). The PLA further defines "harm caused by a product" to include the following: "(a) physical damage to property, <u>other than to the product itself</u>; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J.S.A. 2A:58C-1(b)(2)(emphasis added). Thus, a claim for "physical damage ... to the product itself" is not a "product liability action" because the PLA specifically excludes such damage from its definition of "harm." <u>Estate of Edward W. Knoster v. Ford Motor Co.</u>, 200 F. App'x 106, 116 (3d Cir. 2006)(citing <u>Alloway v. General Marine Ins. L.P.</u>, 149 N.J. 620(1997)); <u>see also</u> <u>Beyerle v. Wright Med. Tech. Inc.</u>, 2014 WL 12623029, at *3 (D.N.J. Dec. 23, 2014).

Electrolux contends that Plaintiff has not alleged "harm to the product itself," because the Microwave "is not rendered unusable" since "the alleged Handle Defect only manifests when

7

the range below is in use." See Electrolux MFR, at 6. Indeed, Plaintiff's Amended Complaint does not claim that the Microwave is "broken" or totally unusable. Rather, Plaintiff alleges that, when an individual is cooking on the surface below, the Handle Defect renders the Microwave unusable by making the handle unreasonably hot and preventing consumers from opening the Microwave door. Although Plaintiff does not allege that the Microwave is "broken," Plaintiff states that the inability to use the Microwave while cooking on the range below substantially interferes with the intended purpose of a product marketed as an "Over-the-Range Microwave." As a result, Plaintiff seeks economic damages associated with the cost of repair or replacement of the Microwave.

This Court finds that Plaintiff need not argue that the Microwave is "broken" to state a claim for "harm to the product itself." As noted in this Court's prior Opinion, courts in the District of New Jersey have held that claims alleging that a plaintiff "did not get what [they] paid for" are not subsumed by the PLA. See Volin v. Gen. Elec. Co., 189 F. Supp. 3d 411, 418 (D.N.J. 2016), as amended (May 31, 2016). In Volin, the District Court denied a motion to dismiss CFA, breach of implied warranty, and unjust enrichment claims, based on an allegation that the plaintiff's oven knobs had a defect that caused the knobs to turn, even when the user was not intentionally trying to light a

8

burner. Id. at 415. Although the Volin plaintiff did not allege that the oven or the knobs were "broken," the court found that the plaintiff's claims were not subsumed at the pleading stage where plaintiff had alleged that she "did not get what she paid for." As such, the Court finds that Plaintiff's allegation, that the Handle Defect diminishes the value and usefulness of the Microwave, could establish "harm to the product itself."

Electrolux argues that dismissal is warranted because "Plaintiff has not alleged harm to the Microwave itself – he has alleged only a risk of personal injury." See Electrolux MFR, at 6 (emphasis added). In support of this argument, Electrolux cites to Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691 (D.N.J. 2011), a case in which plaintiffs sought to recover economic damages for the value of a "flea and tick treatment" product after the product sickened or killed the plaintiffs' pets. Although plaintiffs did not seek recovery for harm to their pets, the District Court found that the plaintiffs' claims were subsumed by the PLA because their allegations were "based on the harm caused to their pets by the alleged defects in the Products, not based on any harm caused to the Products themselves." Arlandson, 792 F. Supp. 2d at 703. However, in Arlandson, the allegations went beyond a mere "risk" of harm; the plaintiffs alleged that the product had already harmed (and in some cases killed) their pets. This is quite different from the instant

9

case, in which Plaintiff does not allege, or seek any damages for, physical harm caused by the Handle Defect (such as burns to his hand).

Although Electrolux attempts to recast Plaintiff's allegations as a PLA claim, Electrolux undercuts its own argument by simultaneously arguing that Plaintiff lacks a viable PLA cause of action.  In Electrolux's initial Motion to Dismiss, Electrolux noted that dismissal with leave to amend would be futile because "[u]nder the PLA, a plaintiff must suffer physical injury to him/herself or to other property to state a claim, and damage to the product itself is not recoverable." See Electrolux MTD [Dkt. No. 35-1], at 2.  As explained by the Third Circuit, where the PLA does not cover the type of damages alleged, the "PLA cannot subsume that which it explicitly excludes from its coverage." Knoster, 200 F. App'x at 116 (finding that there was "no overlap" between the CFA where plaintiffs sought only economic damages resulting from harm to the product itself).  Thus, where a CFA claim relates exclusively to economic damages resulting from harm to the product itself, it cannot be precluded and subsumed by the PLA.  See id.; see also Beyerle v. Wright Med. Tech. Inc., 2014 WL 12623029, at *3 (D.N.J. Dec. 23, 2014)("At this stage in the litigation, it appears that Plaintiff's CFA claim seeks economic damages resulting from harm to the product itself, and, as such, is not subsumed by the PLA").

10

At the pleading stage, this Court finds that Plaintiff's claims, based on the theory that the Handle Defect harms the Microwave itself by diminishing its value and usefulness, are not subsumed by the PLA. Therefore, the Court will deny Electrolux's Motion for Reconsideration as to this Court's finding on the issue of subsumption under the PLA.

### B. *Modified Statute of Limitations (Electrolux)*

In its Motion to Dismiss, Electrolux argued that Plaintiff's breach of the implied warranty of merchantability and MMWA claims are time-barred based on the terms of a disclaimer (the "Disclaimer") in the Microwave's "Use & Care Guide," which purportedly reduced the statute of limitations for breach of implied warranty claims to one year (as opposed to the statutory default of four years). However, in the April 29 Opinion, this Court concluded that the Disclaimer failed to reduce the statute of limitations because it was not "clear and conspicuous" to an average consumer, as required under N.J.S.A. § 12A:2-316.

Now, Electrolux argues that this Court committed "manifest errors in fact and law," by finding that Electrolux's attempt to modify the statute of limitations was subject to the "clear and conspicuous" requirements of N.J.S.A. § 12A:2-316. Specifically, Electrolux argues (1) that N.J.S.A. § 12A:2-316 does not apply to provisions shortening a warranty's statute of limitations, and

(2) that the reduction of the statute of limitations was properly effectuated through an "original agreement" between the parties in accordance with the requirements of N.J.S.A. § 12A:2-725. This Court finds both arguments unpersuasive.

To resolve this issue, the Court analyzes the interaction of two provisions in New Jersey's Uniform Commercial Code ("U.C.C."). Under N.J.S.A. § 12A:2-316, parties are generally allowed to modify implied warranties, provided that the modification is done by a writing that is "clear and conspicuous." See Realmuto v. Straub Motors, Inc., 65 N.J. 336, 341-42 (1974); Gladden v. Cadillac Motor Car Div., 83 N.J. 320, 331 (1980). To be conspicuous, a disclaimer must be "so written that a reasonable person against whom it is to operate ought to have noticed it." Gladden, 83 N.J. at 331. Meanwhile, N.J.S.A § 12A:2-725 sets a default statute of limitations of four years after a cause of action, for a breach of any contract for sale, has accrued. However, "by the original agreement the parties may reduce the period of limitation to not less than one year." N.J.S.A § 12A:2-725(1).

On reconsideration, this Court finds that attempts to reduce to the default statute of limitations for breach of implied warranty, pursuant to N.J.S.A. § 12A:2-725, must comply with the

"clear and conspicuous" requirements of § 12A:2-316.[2] As previously noted, § 12A:2-725 "provides a four-year default [statute of limitations] if the parties do not contract for an alternative." See New Jersey Transit Corp. v. Harsco Corp., 497 F.3d 323, 328 (3d Cir. 2007). In other words, "if the parties have not chosen to contract around § 12A:2-725's default statute of limitations, the buyer may bring suit based on that warranty... until four years after the breach." Id. (emphasis added). Where a default condition exists, any alteration of that default condition would seem to inherently require a "modification." Furthermore, finding that a party could materially alter the length of warranty's limitations period without clear and conspicuous language would be entirely

---

[2] The Court acknowledges that its April 29 Opinion overstated the definitiveness of Third Circuit's holding in New Jersey Transit Corp. v. Harsco Corp., 497 F.3d 323 (3d Cir. 2007), but this Court reaches the same conclusion regarding the implications of the Third Circuit's analysis. Although Harsco does not directly resolve the manner in which § 12A:2-316 interacts with § 12A:2-725, the Third Circuit specifically stated that it disagreed with the District Court's finding "that it was not § 12A:2-316, but § 12A:2-725, a provision with no specific language requirements, which governs the parties' ability to shorten the length of express and implied warranties." See Harsco, 497 F.3d at 328. Additionally, the Third Circuit emphasized that the general purpose of § 12:2-316 is "to ensure that there are no surprises concerning which warranties accompany the goods sold." Id. at 330. Taken as a whole, the Court finds that the Harsco decision strongly implies that the "clear and conspicuous" requirements from § 12A:2-316 should apply when a party attempts to modify the statutory default limitations period for an implied warranty.

13

inconsistent with § 12A:2-316's general purpose "to ensure that there are no surprises concerning which warranties accompany the goods sold." Id. at 330. As such, a party attempting to "contract around" § 12A:2-725's default statute of limitations must comply with § 12A:2-316.

Electrolux also argues that it properly reduced the statute of limitations because the Disclaimer was provided in an "original agreement" between the parties. In support of this argument, Electrolux cites to a case from the Middle District of Pennsylvania, Rice v. Electrolux Home Prod., Inc., 294 F. Supp. 3d 307 (M.D. Pa. 2018), which involved the very same issue currently before this Court. In Rice, the court found that the reduced statute of limitations language in Electrolux's Disclaimer was valid and enforceable. See id. at 315-16. For the reasons explained below, this Court must respectfully disagree with the conclusion in Rice.

Upon review, each of the cases cited in the Rice decision contains crucial factual differences from the circumstances in this matter. For example, in Amvest, which involved the warranty on a commercial truck, both parties were "sophisticated business entities" who engaged in a negotiation process lasting "several months" and plaintiff simply failed to read the contract that indisputably included a provision reducing statute of limitations. See Amvest Corp. v. Anderson Equip. Co., 358 F.

14

App'x 344, 348 (3d Cir. 2009). Next, in Merricks, which involved the warranty on an RV, the plaintiff did not receive the written warranties until after the transaction, but admitted that the dealer had explained that the RV was covered by warranties of different periods and explained what each period was prior to purchase. See Merricks v. Monaco Coach Corp., 2008 WL 5210856, at *2 (W.D. Va. Dec. 15, 2008). Finally, Strange involved the warranty on seats sold to a bus manufacturer, in which the language reducing the statute of limitations was included in the "terms and conditions" that appeared on the reverse side of the purchase order for the seats. See Strange v. Keiper Recaro Seating, Inc., 117 F. Supp. 2d 408, 411 (D. Del. 2000), aff'd sub nom., 281 F.3d 224 (3d Cir. 2001).

In the instant matter, Plaintiff alleges that he is an ordinary consumer who purchased a Microwave "without the terms of [the Disclaimer] ever being disclosed until box is opened after a purchase." See Am. Compl. at ¶ 81. Plaintiff elaborates that the Disclaimer was "not available to buyers prior to purchase," was not visible at the point of sale "because it only appears on the last page of the Use & Care Guide sealed within the Microwaves' box," and was not printed or displayed on the exterior of the boxes. Id. at ¶¶ 87-90. It would be a "manifest error" to analogize these allegations to cases that involved sophisticated business entities or plaintiffs receiving warranty information

15

before or at the time of purchase. At this stage of the litigation, there is no indication that the Disclaimer language constituted an "original agreement" between the parties and the Court is not bound to apply the reasoning from Rice, which this Court believes was incorrectly decided.

### C. *Affirmative Misrepresentations (Midea USA)*

In its April 29 Opinion, this Court found that Plaintiff had adequately alleged that Midea USA, along with Electrolux, had made affirmative misrepresentations by marketing the Microwaves as fit for use "Over-the-Range" despite the Handle Defect. Now, Midea USA argues that reconsideration is warranted because this Court overlooked that Plaintiff did not allege that Midea USA had any role in designing, manufacturing, testing, advertising, marketing, distributing, or selling the Microwaves in the United States. On this point, the Court agrees with Midea USA.

As noted by Midea USA, Plaintiff alleges that most business functions were fulfilled by either Electrolux or Midea China (which is no longer a named defendant). Plaintiff alleges that "Midea USA deceptively and falsely made misleading representations or committed ommissions of material fact in connection with the marketing, promotion, and sale of the Microwaves with the Handle Defect," but never alleges any specific role played by Midea USA. Although Plaintiff alleges

16

that Midea USA is a related business entity to Midea China, Plaintiff fails to allege any specific reason why the actions of Midea China should be imputed to Midea USA. Such pleading fails to meet the level of particularity necessary when a claim is premised on fraud or misrepresentation, as required under Fed. R. Civ. P. 9(b).

Accordingly, this Court will grant Midea USA's Motion for Reconsideration and will dismiss Plaintiff's CFA claim against Midea USA. However, the Court will provide Plaintiff with an opportunity to clarify his allegations, to the extent feasible, through a second amended complaint.

## IV.   CONCLUSION

For the aforementioned reasons, Electrolux's Motion for Reconsideration will be **DENIED**. Additionally, Midea USA's Motion for Reconsideration will be **GRANTED** and Plaintiff's CFA claim against Midea USA will be **DISMISSED WITHOUT PREJUDICE**. The Court will permit Plaintiff twenty-one (21) days to file a second amended complaint, to the extent Plaintiff can, in good faith, remedy the deficiencies outline herein. An appropriate Order shall issue on this date.

**DATED:** October 18, 2019

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE